## APPEAL OF D. N. & E. WALTER & CO., INC.

Docket No. 4006.    Submitted December 24, 1925.    Decided June 21, 1926.

> 1. *Held*, that the evidence establishes that the taxpayer acquired good will for stock, but is insufficient to establish the value thereof.
>
> 2. The taxpayer is entitled to have its profits tax assessed under section 328 of the Revenue Act of 1918.
>
> 3. The amount paid for services rendered in procuring a lease is a capital expenditure which should be spread over the life of the lease.

*W. W. Spalding, Esq.*, for the petitioner.
*Briggs G. Simpich, Esq.*, for the Commissioner.

### Before GRAUPNER,[1] TRAMMELL, and PHILLIPS.

This is an appeal from a determination of a deficiency in income and profits taxes for 1918 in the amount of $9,517.63. The deficiency arises from the refusal of the Commissioner to include in the taxpayer's invested capital any amount on account of good will alleged to have been purchased by it, or the depreciated cost of a certain lease acquired by the taxpayer in 1909, and to allow as a deduction from gross income any part of the cost of the lease.

#### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of California in 1896 to take over the business of the partnership of D. N. & E. Walter & Co., which had continuously since 1858 been engaged in the business of buying and selling carpets, rugs, curtains, draperies and other household furnishings in San Francisco. The business of the partnership had become firmly established. It was a successful and stable enterprise. Its sales territory covered California, Washington, Idaho, Oregon, Nevada, and a portion of Arizona. The corporation, in exchange for all the assets of the partnership, including good will, issued to the members of the partner-

---

[1] This decision was prepared during Mr. Graupner's term of office.

ship, according to their respective interests therein, 648 shares of its capital stock of the par value of $1,000 per share. The corporation also assumed all the liabilities of the partnership. The value of the tangible assets in excess of liabilities alone equaled the par value of the stock, that is, $648,000. The tangible assets and the liabilities of the partnership, as they appeared on its books, were set up on the books of the corporation, but no entry was ever made on the corporation books of any good will acquired from the partnership.

The taxpayer's outstanding capital stock during each of the years 1897 to 1900, inclusive, was of the par value of $718,000.

The net tangible assets in excess of the liabilities of the taxpayer at the beginning of the years 1897, 1898, 1899, and 1900, respectively, and the net earnings for those years, were as follows:

|  | Tangible assets | Net earnings |
|---|---|---|
| 1897 | $782, 620. 00 | $131, 633. 09 |
| 1898 | 849, 633. 09 | 54, 209. 00 |
| 1899 | 788, 962. 09 | 120, 071. 14 |
| 1900 | 858, 733. 23 | 138, 760. 80 |
|  | 3, 279, 988. 41 | 444, 673. 91 |
| Average | 819, 997. 10 | 111, 168. 48 |

The sales of the partnership for the four years preceding the date of the organization of the corporation were:

| 1892 | $1, 150, 727. 24 |
|---|---|
| 1893 | 952, 430. 56 |
| 1894 | 773, 778. 85 |
| 1895 | 881, 032. 48 |
| Average | 939, 492. 28 |

The sales, after the corporation took over the business, were as follows:

| 1896 | $776, 202. 76 |
|---|---|
| 1897 | 885, 346. 80 |
| 1898 | 786, 608. 18 |
| 1899 | 959, 655. 22 |
| 1900 | 1, 211, 485. 86 |
| Average | 925, 859. 76 |

In the year 1907 the taxpayer purchased the business of the Mc Cann Allen Co., a partnership, which was engaged in a business similar to that conducted by the taxpayer. The purchase was made not only to acquire the tangible assets of the McCann Allen Co., but also to secure for the taxpayer the services of McCann, whom it thereafter employed at a regular salary plus an interest in the net profits. The taxpayer paid to the McCann Allen Co. $35,000 or $40,000 for its tangible assets, and also paid to McCann $10,000. The $10,000 paid to McCann was charged to expense on the taxpayer's books.

In the year 1908, the taxpayer secured a lease upon a certain building for a term of ten years from about September 1, 1909, at a large annual rental. In January, 1909, the taxpayer paid to Baldwin and Howell, real estate agents, $5,000 for services rendered by them in procuring the lease.

The Commissioner, upon audit of the taxpayer's income and profits-tax return for the year 1918, refused to include in invested capital any amount on account of the good will alleged to have been acquired from the partnership of D. N. & E. Walter & Co. and the McCann Allen Co., or on account of the lease mentioned, or to allow the taxpayer any deductions from gross income on account of the exhaustion of the lease.

### OPINION.

TRAMMELL: The principal issue presented by this appeal is whether the taxpayer is entitled to include in its invested capital for the year 1918 any amount on account of good will, if any, acquired by it from the partnership D. N. & E. Walter & Co. in exchange for shares of its capital stock. The taxpayer contends that good will was so acquired; that it had an actual cash value of $268,777.00, and that it should be included in invested capital subject to the limitations on intangibles.

The evidence establishes that in the year 1896 the taxpayer, in exchange for 648 shares of its capital stock of the total par value of $648,000, acquired all of the assets of the partnership mentioned, including its good will. No good will was set up on the books of the taxpayer, but witnesses for the taxpayer testified that this was because of the fact that it is a " family corporation," and that the assets were transferred just as they stood on the books of the partnership. The fact that good will was not set up on the books of the taxpayer is only an evidentiary fact to be considered in connection with all other facts, but is not controlling. Since the value of the tangible assets acquired by the taxpayer from the predecessor partnership equaled the par value of the stock issued for all the assets, the question arises as to whether good will was specifically acquired for stock. We are convinced from the evidence that such good will as the predecessor partnership had was included among the assets transferred to the taxpayer. It is clear also that stock of the taxpayer corporation was the sole consideration for all assets which it received.

It then becomes necessary to determine the value of the good will acquired from the predecessor partnership. The partnership had been engaged in business since 1858 and had become firmly established as a successful enterprise so that its business extended through several States. The books of the partnership have been lost or destroyed and the net profits and the amount of the tangible assets

for the years prior to 1896 are not now shown. The sales of the partnership for the years 1892 to 1896, inclusive, were as large as they were after the corporation took over the business.

These facts lead us to the conclusion that the corporation acquired good will for stock, but are not sufficient to enable us to determine the value thereof. Pertinent facts relating to the business and assets of the partnership are lacking. It does not necessarily follow that the partnership had good will of the same value as the good will which the successor corporation is shown, by the capitalization of its earnings, to have had, and we have no other evidence upon which to determine the value thereof. The net earnings and assets of the partnership might have been greater or less than the net earnings and assets of the corporation, and the conditions under which it carried on business might have been entirely different. While the gross sales of the partnership were as large as the gross sales of the corporation, we have no evidence as to what its profits were. It might have been that the business methods of the corporation were so superior to those of the partnership as to enable it to realize profits while the partnership's business had no net profits above a fair return on tangible assets. At any rate, the profits realized by the corporation, in the absence of other evidence, are not sufficient evidence to establish the actual value of good will of the partnership.

We are convinced, however, that the taxpayer acquired a mixture of tangible and intangible assets for stock the pro rata values of which can not be segregated.

The taxpayer, therefore, comes within the scope of section 327 and it is entitled to have its profits tax determined under the provisions of section 328, if it would receive relief thereby. The determination of the tax under that section, if the Commissioner finds that the application of comparatives will give any relief, shall be final.

With reference to the amount of $10,000 paid by the taxpayer to McCann, we are not satisfied that it was paid for the good will of the McCann Allen Co. While the witnesses in the case testified that the payment to McCann was for the good will of the business in which he was then engaged, they also testified that it was paid with the object of securing McCann's services for the taxpayer. It may be pointed out that the payment is not claimed or shown to have been made to the firm of McCann and Allen whose good will the taxpayer claims to have purchased, but was made to McCann as an individual. The transaction savors more of a payment in the nature of a bonus to McCann for entering into the taxpayer's employ than of a purchase of the good will of the McCann Allen Co. In our opinion, the evidence does not establish that the expenditure in question was of a capital nature and the taxpayer's claim for the inclusion of the amount thereof in its invested capital should be denied.

The evidence relative to the payment of $5,000 to Baldwin and Howell in the year 1909 satisfies us that it was for services rendered by them in procuring a lease of certain real estate for the taxpayer. The payment was, therefore, a capital expenditure and represented a part of the cost to the taxpayer of the lease acquired. It follows that the taxpayer is entitled to deduct from gross income, during each year of the life of the lease, an aliquot part of the cost thereof, and to include in invested capital for the year 1918, as a part of its earned surplus, the depreciated cost of the lease as of January 1, 1918.

*Order of redetermination will be entered on 10 days' notice, under Rule 50.*