STEPHENS FUEL CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15343, 26383. Promulgated September 28, 1928.

*Francis J. Batchelder, Esq.*, for the petitioner.
*Frank S. Easby-Smith, Esq.*, for the respondent.

OPINION.

ARUNDELL: The petitioner claims that in computing the depreciation allowable during the years under review it is entitled to use as a basis the fair market value of all the assets subject to depreciation when acquired in August, 1919, for stock, and the Commissioner erred in using as a basis the same figure that he used in computing invested capital, which had been computed under section 331 of the Revenue Act of 1918. It appears from the record that the Commissioner reduced the book value of the assets acquired from the Olin J. Stephens Co. only. .Therefore, the value of the property acquired from the Olin J. Stephens Co. is the only value at issue. It apparently is conceded by the Commissioner that the basis for computing depreciation is not limited by the provisions of section 331 of the Revenue Act of 1918, but he does not admit that the depreciation allowed was inadequate. The only testimony introduced by the petitioner was to the effect that certain appraisals were made by an appraisal company of the tangible assets acquired from the various concerns and that the values thus determined were used by all of the parties and were the amounts for which the stock was issued. There is no evidence, other than this statement and the amounts placed on the books, to prove what the fair market value of the assets was in August, 1919. In our opinion the petitioner has failed to prove that the values allowed by the Commissioner as the basis for depreciation did not represent fair market values of the assets on that date. The basis for computing depreciation as used by the Commissioner must therefore be accepted.

The petitioner has agreed with all of the rates of depreciation used by the Commissioner except the rate on motors for the year 1923. Petitioner has shown that during that year motors were put to excessive use and subjected to excessive wear and tear, and that the reasonable depreciation for that year was 30 per cent. We are, therefore, of the opinion that for the fiscal year ending July 31, 1923, the fair rate of depreciation on motors was 30 per cent.

In the 60-day letter attached to the petition covering the fiscal years ending July 31, 1922, to July 31, 1924, inclusive, a table is attached showing the computation of depreciation. In this table it is evident that no depreciation was allowed for boats for the fiscal year ending July 31, 1923, although it is shown therein that the account stood at $3,275 on July 31, 1922, and $7,275 on July 31, 1923. In our opinion the petitioner is entitled to depreciation for the fiscal year ending July 31, 1923, on boats at a rate of 10 per cent.

The petitioner apparently concedes that $50,000 commissions paid for the sale of first preferred stock is not deductible as an ordinary and necessary expense, but claims that the balance of $28,756.12 was properly expense. These expenses consisted of lawyers' fees, accountants' fees, appraisals of property, and other items incurred in connection with the examination and acquisition of various properties. They were not ordinary and necessary expenses of doing business. See *First National Bank of St. Louis*, 3 B. T. A. 807, and *Emerson Electric Manufacturing Co.*, 3 B. T. A. 932. The petitioner entered the $78,756.12 in its ledger as "organization expense," thus in effect treating it as a capital expenditure, and thereafter endeavored to write it off by annual charges. In advancing its present claim it has failed to segregate the expenditures over the years involved, although it is apparent that the major portion was incurred prior to 1920. In order for a deduction to be allowed as an ordinary and necessary expense it must be either paid or incurred during the taxable year. The record does not show what expenditures were made or incurred during the years at issue. Therefore, even if certain of the expenditures were of such a nature as to come under the head of business expenses we would be unable to make a finding thereon without knowledge of the amounts of such expenditures and the dates when incurred. The action of the Commissioner in disallowing the deduction of these expenditures as ordinary and necessary expenses is, therefore, approved.

During the years involved the petitioner spent from $1,000 to $2,000 a year as donations to various organizations and claims that such expenditures were in the nature of business expenses made to retain the good will and the trade of the customers, and that, therefore, it is entitled to deduct such expenditures from income.

The evidence submitted on this issue is insufficient to prove that the action of the Commissioner in disallowing these expenditures as expenses was incorrect.

It is conceded by petitioner that the tonnage acquired from Olin J. Stephens, Inc. is not subject to revaluation under section 331 of the Revenue Act of 1918. It is claimed, however, that the good

will, represented by customers consuming approximately 160,000 tons a year, obtained from other concerns, and for which stock was issued, should be included in invested capital. Under the decision in *R. H. Perry & Co.*, 12 B. T. A. 328, the petitioner may include in invested capital the fair market value of the property acquired in August, 1919, from these other concerns.

Melvin G. Palliser, an attorney, who had an intimate part in the organization of the petitioner and the acquisition of its assets and who was familiar with the buying and selling of good will of this character, testified that such good will was bought and sold at a rate of $1.50 to $2 a ton on coal tonnages represented by customers' requirements. He further stated that he had negotiated the sale of good will of this character in 1920 at a rate of $1.50 a ton. Mr. Palliser's testimony convinces us that good will represented by customers and customers' requirements is susceptible of valuation and had a recognizable market value. However, he has not given us any substantiating date or transactions that would apply to the year 1919 and convince us that his judgment and recollection were not at fault.

It is shown in the findings of fact that the petitioner acquired both good will and tangible assets at approximately the same time by the issuance of stock. Some of the tangible property was acquired by the issuance of 14,618 shares of no par common stock.

It is reasonable to assume that all shares of common stock in August, 1919, were of equal value, and that the common stock was issued for assets in proportion to the value of such assets. Therefore, the agreed value of the tangible assets acquired for common stock would reflect a value per share of common stock which would be a limiting figure to be applied to common stock issued for intangible assets which are not susceptible of such definite determination as are tangible assets.

By applying the ratio between the value of tangible assets acquired for common stock and the common stock issued for them, to the common stock issued for intangibles, a figure would be obtained which would reflect the fair market value of the good will when acquired, based upon the value of tangible assets as determined by the parties themselves.

Taking into account this fact, together with all of the other evidence and testimony in the record, we are of the opinion that the value of the good will represented by customers consuming approximately 160 tons of coal a year was not in excess of $112,000, and that the petitioner is entitled to include this amount in the computation of invested capital.

*Judgment will be entered under Rule 50.*