*Decision will be entered under Rule 50.*

ROBERT H. MCNEILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17261. Promulgated May 10, 1929.

*Robert H. McNeill* pro se.

*T. M. Mather, Esq.*, for the respondent.

OPINION.

LANSDON: Upon the record we are unable to find as a fact that the Lynch note was ascertained to be worthless in 1922. On this issue the determination of the respondent is approved.

The petitioner claims that under the provisions of section 214 (a) (5) of the Revenue Act of 1921 he is entitled to deduct from his gross income in the taxable year the loss resulting from the ascertained worthlessness of the stock of the Fulton Oil Co. in that year and that such loss should be measured by the cost of the property which he exchanged therefor. We have found that the stock was ascertained to be worthless in the taxable year. The cost of stock acquired subsequent to March 1, 1913, is the basis for determining gain or loss resulting from the sale or other disposition thereof, and proof of worthlessness within the taxable year satisfies the condition that only realized losses are deductible from income for Federal tax purposes. *Milton H. Bickley*, 1 B. T. A. 544; *Henry M. Jones*, 4 B. T. A. 1286; *Remington Typewriter Co.*, 4 B. T. A. 880; *Joslyn Mfg. & Supply Co.*, 6 B. T. A. 749; *Fred Grittman*, 11 B. T. A. 122.

In numerous decisions we have held that the cost of stock acquired in exchange for other property is its fair market value at date of acquisition. *Nellie Kenefick, Executrix*, 3 B. T. A. 659; *Wallis Tractor Co.*, 3 B. T. A. 981; *Charles W. Slater*, 5 B. T. A. 804; *John B. Murphy*, 8 B. T. A. 416. If a stock is listed the price reported in stock exchange transactions may be considered as evidence of its market value. There is no evidence of record that the Fulton Oil Co. stock was listed on any stock exchange, or that there were at any time authoritative quotations indicating its market value. Proved sales at arm's length at or about the date involved may establish fair market value. As a condition of the agreement under which the petitioner exchanged his leases for stock, the Fulton Oil Co. agreed to sell and did sell 50 shares of the stock allotted to him for $100 a share. We are not convinced that this single transaction—and it is the only sale of this stock which has been called to our attention—established a market price. There is no proof that such sale was made to the public. The stock may have been taken by the promoters themselves and the $5,000 paid therefore may have been in effect only an additional consideration running to the petitioner for the leases which he turned in to the company. Without more evidence of the nature of this sale we can not hold that it was an arm's length transaction reflecting the market value of the stock. In the absence of prices established by sales, the market value of stock may be determined by ascertaining the value of the assets for which it was issued. *George A. Ricker et al.*, 10 B. T. A. 11; *S. R. Roseberg*, 13 B. T. A. 503. Here, again, we are confronted by lack of evidence. We have no information as to the value of all the assets for which the Fulton Oil Co. issued its stock. We do not know the total par value of the stock issued or the total amount of cash, if any, received by the company from sales thereof. The market value of such stock at date of acquisition not having been established, there is no basis for the computation of the loss which the petitioner sustained when the stock became worthless in the taxable year. On this point the determination of the Commissioner is approved.

We are satisfied with the proof of the losses sustained in the taxable year on account of the petitioner's investments in the stocks of the Smith Ray Copper Co., the Texas Mutual Oil Co., and the Washington-Kentucky Oil Co., in the total amount of $650, which should be deducted from the petitioner's gross income in the taxable year.

Petitioner testified that the lease of his Maryland land to the Government was for a term of two years, at an annual rental of $25,000, and that he paid certain agents the amount of $3,000 for

services in procuring such lease. We have frequently and consistently held that expenses incurred by a lessee in connection with the acquisition of a leasehold or other capital assets, such as bonds having a definite income-producing life, are capital expenditures and that for each taxable year ending within such term the lessee is entitled to deduct a ratable part of such expenditures from his gross income. *D. N. and E. Walter & Co.*, 4 B. T. A. 142; *Lincoln L. McCandless*, 5 B. T. A. 1114; *C. M. Nusbaum*, 10 B. T. A. 664; *Marjorie Post Hutton*, 12 B. T. A. 265. In these and similar cases the lessee or the purchaser was the moving party claiming the right to deduct such expenditures from income as ordinary and necessary expenses. The disallowance in each instance was based on the theory that the expense was incurred in the acquisition of assets that became fused into the capital structure of the petitioner for income-producing purposes through a term of years and should be prorated against the income realized in each year of such term.

It appears, however, that in at least one case, *Crompton Building Corporation*, 2 B. T. A. 1056, we have held that brokers' commissions paid for procuring or selling leases to property owned by the taxpayer are capital expenditures which should be spread over the term of the lease. In our opinion in that proceeding we said:

> The leases were to run for a period of five years, and amounts paid out in acquiring them are just as much capital expenditures to be returned over the life of the leases as if they had been paid out by the tenant in acquiring a leasehold estate. The lease of property running for a period of years is just as much property in the hands of the owner as a leasehold is property in the hands of a tenant. As such the acquisition thereof by the owner of the property is capital.

If the *Crompton* decision is sound law, it follows that it is immaterial whether expense in connection with the creation of a leasehold interest in property is incurred by the lessor or the lessee and that case and those above cited establish a principle that makes it impossible for us to allow the deduction here claimed as an ordinary and necessary expense incurred or paid in the taxable year and requires us to find that the amount in question is a capital expenditure amortizable over the term of the lease.

After careful consideration, however, we are convinced that there is a readily distinguishable difference between the situations of the lessor and lessee in connection with expenses incident to the creation of a leasehold. The lessor acquires nothing that can be taken into his accounts as a capital asset. On the contrary he parts with something when he severs the lesser or leasehold interest from the greater or fee interest of the estate. In effect he sells the right to use his property for a limited term and the commission which he pays may

very properly be regarded as expense incident thereto. On the other hand the lessee acquires something which he can take into his assets accounts. He has more than he owned before the transaction and the fee owner has less. In exchange for income, all of which may be taxable, the lessor has parted with the right to use a certain part of his capital. The lessee has acquired a capital asset at a cost which he is entitled to recover free from tax within the period of its useful life to him, which is the term of the lease. The lessor merely makes a sale and has no capital investment to recover. If he incurs any cost in the creation of the leasehold estate, he may be entitled to deduct the amount thereof from his gross income, but certainly not ratably over the term of the lease, since such expense is for a service in connection with a transaction which is closed when the leasehold is created. The lessor is, therefore, in the situation of one who pays a commission for a service rendered and in this case is within the rule established in *Olinger Corporation*, 9 B. T. A. 170, which is based on *American National Co. v. United States*, 274 U. S. 99. We conclude, therefore, that this petitioner is entitled to deduct the amount of $3,000 from his gross income for 1922 as commission for services rendered to him in that year and that in view of the conclusion here reached and of our opinion in the *Olinger* proceeding, *supra*, it is necessary to reverse our opinion in *Crompton Building Corporation*, *supra*.

The petitioner having failed to prove the nature of the taxes in the amount of $1,075, which he paid in the taxable year, this claim must be disallowed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SMITH, STERNHAGEN, GREEN, and ARUNDELL concur.

TRAMMELL dissents.

---

PHILLIPS, dissenting in part: The petitioner paid $3,000 to secure a lease which was to pay him income over a period of two years. Such payment represents the cost to him of such lease and should be recovered by deductions taken over the period of the lease. *Duffy v. Central Railroad Co.*, 268 U. S. 55. I can not agree with that portion of the opinion which holds that such payments are to be deducted when paid.

MILLIKEN agrees with this dissent.