BONWIT TELLER & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 21859, 27824, 28700. Promulgated October 18, 1929.

*Arthur B. Hyman, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

### OPINION.

STERNHAGEN: 1. The petitioner formally pleads the bar of the statute of limitations, but counsel submits neither reason nor authority to support it, asking only that the facts be found. The deficiencies are not barred. Revenue Act 1924, sec. 277(a)(1); Revenue Act 1926, sec. 277(a)(2).

2. The respondent, for each of the three years, reduced the deduction for exhaustion, wear and tear of furniture and fixtures. There is no evidence on the point, and hence no facts can be found and no error discovered. Respondent is sustained.

3. The evidence sufficiently establishes the reasonableness of an allowance for exhaustion, wear and tear and obsolescence of the two buildings on East Thirty-eighth Street of 10 per cent of their allocated cost of $70,000, or $7,000 in 1922. The profit from the sale

in 1924 should be computed by applying such depreciation, including $3,500 for 1921, to such cost.

4. Petitioner claims the right to deduct in 1922 the entire brokerage fee of $20,000 paid in that year in connection with its transaction with the Primrose Silk Co. It does not appear in evidence in precise terms whether petitioner assigned its entire right and obligation in respect of the building so as to terminate entirely its relation to the building and its owner, or contracted with the Primrose Co. to make the latter its sublessee (as stated by counsel in brief) thus retaining its rights and obligations to the fee owner and securing rights against the Primrose Co. It does not appear what were petitioner's obligations as to rent or what were its emoluments from the Primrose Co., nor does it appear what period of time the original lease or subsequent contract was to endure. Since the burden of proof is upon petitioner and it has left these facts unproven, we must supply the omission by an unfavorable hypothesis of consonant facts.

It is consistent with the evidence to suppose petitioner a lessee for a long term at a fixed annual rental. It pays a brokerage fee of $20,000 to secure a subtenant from whom it receives a substantially larger rental, thus enjoying a regular annual gain during all of the term. It seems clear that under such circumstances the brokerage fee is an investment of capital in a contract yielding income and not an ordinary and necessary expense of carrying on a trade or business, and hence that it should not be deducted from the income of the initial year. The correlation between income and outgo recognized in *American National Co.* v. *United States*, 274 U. S. 99, would discountenance such treatment, and would require the periodic amortization of the expenditure proportionately as the resulting income is derived. The respondent is sustained.

This is contrary to some of the discussion found in *Robert H. McNeill*, 16 B. T. A. 479, overruling *Crompton Building Corporation*, 2 B. T. A. 1056. In the *McNeill* case the discussion went beyond the necessity of the case. The fee paid there was by the owner for general services of looking after the property, effecting the lease for two years, and attending to other matters. It was not necessarily a single brokerage fee to procure steady income. That the question is not free from difficulty will appear from several decisions of the Board involving close distinctions. *Crompton Building Corporation, supra; D. N. & E. Walter & Co.*, 4 B. T. A. 142; *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566; *Henry B. Miller*, 10 B. T. A. 383; *C. M. Nusbaum*, 10 B. T. A. 664; *Marjorie Post Hutton*, 12 B. T. A. 265; *Robert H. McNeill, supra.* See, also, *Duffy* v. *Central R. R. of N. J.*, 268 U. S. 55. We are of opinion the respondent correctly disallowed the deduction.

5. The respondent in his answer admits the fact that in 1922 petitioner sustained an operating loss in respect of its building, some part of which was regularly occupied by tenants. The disallowance of the loss was the result of a misconstruction by respondent of petitioner's accounts for the building, by which it apparently mingled its current operating losses with the accumulations of " deferred assets " set up in respect of empty space for prior years. In accordance with respondent's admission of the facts and the statement made at the hearing that the deductibility of the item was not in dispute, the respondent's disallowance is reversed and the deficiency should be redetermined accordingly.

6. The respondent reduced invested capital by $70,501.60, representing the aforementioned " deferred asset " account. Petitioner alleges and respondent in answer admits in respect of this item that " surplus should have been reduced only by the sum of $46,687.59." The deficiency should be modified accordingly.

7. The petitioner contends that it is entitled to a finding of fact that its interest as lessee in the leasehold·of the land and building which it occupied at Fifth Avenue and Thirty-eighth Street had on March 1, 1913, a fair market price or value of $1,000,000 to be used as the basis of a deduction in each of the years 1922, 1923, and 1924 of a " reasonable allowance for exhaustion." Sec. 234 (a) (7) ; *Grosvenor Atterbury*, 1 B. T. A. 169. The respondent has determined that petitioner's interest had no value on that date and hence no basis for an exhaustion allowance. The burden of proving any value therefore rests upon petitioner.

The issue is whether the terms of the lease were on March 1, 1913, so favorable to the lessee that his net interest, consisting of both his rights and obligations, could have been sold by him to another; and, if so, at what price. The terms were fixed at arm's length in July, 1910, less than three years before, and occupancy of the newly constructed building had commenced less than a year and a half before the valuation date. On that date petitioner possessed the property with over 19 years to run and a right to renewal. Some of the burdens of his lease were behind him, such as the carrying charges during construction. The burdens to come were the rental at $110,000 for 8 years and $130,000 for the remainder, plus the uncertain carrying charges, including taxes, insurance, repairs, and running expenses. Apparently 5 per cent was regarded as a fair money rate for the renewal rental was to be measured by it. The lessor was permitted to mortgage at interest of $125,000, which at 5 per cent would represent a mortgage of $2,500,000, which in turn was no doubt substantially less than the full value of the land and

building. The lessee's experience prior to March 1, 1913, justified the expectation that $120,000 gross rent would be received for the seven floors rented.

That these facts indicate a substantial value in the lessee's interest is quite clear. We are, however, of opinion that petitioner's evidence does not support the value claimed. Its principal witness was a real estate dealer whose opinion of value was asked. This witness' opinion was, we think, not entitled to full weight, since in his method of valuation he used factors which were not entirely in accord with the facts as to this property. One such discrepancy lay in his use of an annual rental of $110,000 for 19 years, whereas the lease provided an increase to $130,000 after 8 years. There are other discrepancies. The rental values given by him for other properties were not shown to be comparable. Bare figures are of little use apart from the substantive terms and circumstances of the leases.

On the other hand, respondent with equal opportunity to investigate and present evidence of factors of value or lack of value, has introduced no evidence on the point, but stands on his official determination.

After considering all the evidence fully, we have fixed a value of $350,000, and exhaustion should be computed by spreading this over the original and renewed term of 39 years 7 months, or at a rate of over 2½ per cent. *719 Fifth Avenue Co.*, 5 B. T. A. 565. The reasonable annual exhaustion allowance is $8,850, and this should be deducted in redetermining the deficiency for each of the three years.

8. The petitioner claims that the cost of $11,104.98 occasioned by the change of its heating system from coal-burning to oil-burning is deductible in 1923 as an ordinary and necessary expense of carrying on its trade or business during that year. Sec. 234(a)(1). Its principal argument seems to be that because its president thought that it added nothing to the value of the building, it could not be be called a capital investment. Leaving out any doubt as to the correctness of the president's view as to the fact of increased value, this is not the criterion of a capital expenditure. Necessary replacements or useful improvements may properly be capitalized and their cost amortized out of income of the years of their useful life, even although the market value of the whole property shows no perceptible increase.

But aside from this, the issue here is in terms of the statute—not whether the cost is a capital expenditure, but whether it is an ordinary and necessary expense of carrying on the business. We think it is not and is not deductible. Sec. 215; *Simmons & Ham-*

*mond Mfg. Co.*, 1 B. T. A. 803. The fact that it was occasioned by a circumstance outside of petitioner's control does not bring it within the statutory deduction. *Robert Buedingen*, 6 B. T. A. 335; *Frank & Seder Co.*, 13 B. T. A. 1; *Woodside Cotton Mills Co.*, 13 B. T. A. 266.

9. The evidence is not sufficient to establish, as petitioner contends, that the amounts of $5,447.49 for 1923 and $2,640.64 for 1924 were "ordinary and necessary business expenses." The respondent, as we must assume, has investigated and found and, hence, has determined that these amounts were made up of charitable contributions, which are not deductible when made by corporations as they would be by individuals. The petitioner offered only a most cursory conclusion by its president that these in the aggregate were expenses. Thus, without more, the issue is only whether we should give credence to the witness' characterization or the Commissioner's, when petitioner has not proved the facts. We sustain the respondent. *Stephens Fuel Co.*, 13 B. T. A. 666.

10. Petitioner contests the respondent's computation of invested capital in respect of good will. The principal fact relied upon in evidence is that respondent for 1922 allowed a lower good will than he allowed for previous years. There is no factual evidence of the value of good will at the time paid in, and, except for the president's opinion in testimony, there is nothing by which to test the existence or value of good will in 1907 or 1911. Respondent's allowance for prior years is not a binding determination of the fact, properly denied in the pleadings, as to the year before the Board. See *James Couzens*, 11 B. T. A. 1040.

This also disposes of the corollary attack upon the respondent's method of applying the 25 per cent limitation provided in the statute as to intangible invested capital. The respondent has taken $859,433.34 as the value of capital stock outstanding at the beginning of the taxable year. There is no reason in the record to question the correctness of this. Clearly then no amount may be included for intangibles greater than 25 per cent of that amount. The respondent is sustained in his treatment of good will.

11. There is a further issue as to invested capital, but no evidence was introduced to support it, and respondent is sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MURDOCK concurs in the result.

SMITH did not participate.