PLAINFIELD-UNION WATER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89513. Filed November 5, 1962.

*Martin D. Ginsburg, Esq.,* for the petitioner.
*Gerald N. Daffner, Esq.,* for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency of $16,471.61[1] in petitioner's income tax for the calendar year 1957. The only issue remaining before us is whether a certain expenditure made for cleaning and lining of pipe is a deductible repair or a capital expenditure.[2]

FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Petitioner, a New Jersey corporation incorporated in 1906, is a public utility engaged in the business of supplying water and, in connection therewith, maintaining a system of water mains and pipes used in conducting such supply of water to users in various towns in New Jersey. It filed its income tax return for the calendar year 1957 on an accrual basis with the district director of internal revenue at Newark, New Jersey.

Pipe was first installed in the Plainfield-Union water system in 1890. In 1910, petitioner installed 9,390 feet of 16-inch cast-iron pipe three-fourths of an inch in thickness (hereinafter sometimes referred to as the "Maple Avenue main") at a cost of $18,804.54. At the time of the original installation of this pipe, it was painted internally with tar. Cement-lined pipe was not available in 1910. By December 31, 1957, petitioner had in its water supply system 2,825,624 feet of cast-iron pipe ranging in diameter from 2 to 24 inches, including 118,738 feet of 16-inch cast-iron pipe.

Petitioner has utilized the double declining balance method for depreciation purposes for all depreciable assets acquired after December 31, 1953. All of the assets in question are included in a single account. The composite rate of depreciation applicable is 3.5 percent.

Prior to utilization of the double declining balance method, petitioner had taken deductions on the straight line method at various composite rates. Until the close of the taxable year ending December 31, 1928, petitioner used various rates in the neighborhood of 2 percent. From January 1, 1929, through December 31, 1939, petitioner's composite rate was 2¼ percent. Since January 1, 1940, petitioner has utilized a composite rate of 1.75 percent for all depreciable assets acquired prior to December 31, 1953.

At the time of installation in 1910, the Maple Avenue main was assigned a useful life of 100 years. For Federal income tax pur-

[1] This deficiency arose from respondent's disallowance of a deduction of $31,676.20 even though petitioner had deducted only $28,355.40. Petitioner now alleges that $33,208 was deductible, consequently a Rule 50 computation is unavoidable.
[2] The relevant I.R.C. sections are sec. 162(a) and sec. 263. All references are to the I.R.C. of 1954.

poses, this pipe had not been fully depreciated as of the end of the taxable year 1957.

Prior to 1950, petitioner used well water exclusively. In 1950, petitioner tied the Maple Avenue main into the Elizabethtown water system and thereby provided itself with an additional source of water. The Elizabethtown water herein relevant is filtered river water, which is substantially more "aggressive" (acidic) than the well water which otherwise comprised petitioner's system. Tuberculation results from the attack by an aggressive water upon the metal of a pipe beneath the tar or asphalt lining. This attack often occurs at points where the lining does not completely cover the metal. The aggressive water and metal produce an iron oxide which gradually pushes up the tar or asphalt coating, resulting in what is known as tuberculation. The result of tuberculation is that the carrying capacity of the pipe is often reduced, the maximum reduction usually being 50 percent. Red water and tuberculation frequently, but not always, occur together. Red water is often caused by a high velocity in the pipeline which carries some of the iron oxide deposits along the transmission main to the consumer.

The Elizabethtown system and petitioner were tied in at one end of the Maple Avenue main. At the other end there were two lines— the first comprised a 6,038-foot line of 16-inch tar-lined cast-iron pipe, installed in 1937, and the second consisted of a 16-inch cast-iron main running under Woodland Avenue. The connection between the Maple Avenue main and the latter line was closed, except for approximately 2 weeks, at all times material. Therefore no Elizabethtown water usually ran through it. The line under Woodland Avenue was not cement lined and had been installed by 1910. There had never been a drop in the carrying capacity of that line.

After passing through the Maple Avenue main and the 6,038-foot line, the Elizabethtown water continued into a 24-inch cement-lined Raritan Road main. The Raritan Road main, which was installed subsequent to 1950, was cement lined at installation. Petitioner has been buying solely cement-lined pipe since approximately 1954. By the time the Elizabethtown water reached the end of the Raritan main, it had mixed with well water and was comparatively diluted and nonaggressive.

Petitioner did not have any tuberculation prior to 1950. The Maple Avenue main lost carrying capacity sometime subsequent to the introduction in 1950 of the undiluted aggressive Elizabethtown river water and by 1954 there was a substantial diminution in said main's carrying capacity. Petitioner caused it to be cleaned, in 1954, in order to restore its carrying capacity to the pre-1950 level.

By 1957 the carrying capacity of the Maple Avenue main had again been substantially diminished and there was tuberculation in the rel-

evant pipe. During the calendar years 1957 and 1958, petitioner caused the Maple Avenue main to be cleaned and lined with a cement lining three-sixteenths of an inch in thickness. During the calendar year 1957, 7,400 feet of said pipe was so cleaned and lined.

The cleaning and cement lining was commenced December 10, 1957, and completed January 8, 1958. The total contract cost was $42,003.80, of which $33,208 was allocable to 1957.

In 1960 petitioner caused the 6,038 feet of pipe between the Maple Avenue main and the Raritan Road main to be cleaned and cement lined. With the exception of the 1954 cleaning and the 1957–1958 and 1960 cleaning and cement lining, petitioner has never in its history cleaned or cement lined any of its formerly tar-lined pipe. The amount so cleaned and lined comprised approximately one-half of 1 percent of petitioner's pipes. There was no indication that further cleaning or cement lining would be needed by petitioner on any of its other lines.

The cement lining is not permanent and will wash out eventually. Cleaning and cement lining usually eliminate the problems of tuberculation and the necessity of periodic cleaning for as long as the cement lining lasts.

Of the $33,208 allocable to the 1957 cleaning and cement lining of the Maple Avenue main, petitioner capitalized $1,531.80 on its 1957 Federal income tax return and deducted $28,355.40 as an ordinary and necessary business expense, which expense respondent has disallowed. Petitioner arrived at the capitalized figure of $1,531.80 by applying a factor of 23 cents per foot to the 7,400 feet of pipe actually lined in 1957; 7,400 feet at 23 cents per foot gave a figure of $1,702 against which the usual 10 percent retainage of $170.20 was deducted, resulting in the net capitalized figure of $1,531.80. Twenty-three cents per foot represented the additional cost in 1957 for 16-inch cement-lined over tar-coated pipe three-fourths of an inch in thickness. The cost per foot, before installation, of cast-iron cement-lined pipe was $6.43, and the cost per foot of pipe painted internally with tar was $6.20.

The year 1957 was a base year for petitioner's regulated utility rate-making purposes. The accounting treatment employed by petitioner in connection with the relevant 1957 cleaning and cement lining for tax purposes was uniformly submitted to, and accepted by, the New Jersey Public Utilities Commission as a correct treatment. It would have been advantageous for petitioner to capitalize the relevant expenditures for rate-making purposes, because the rates are based on a percentage return of capital investment.

The reduction in carrying capacity of the Maple Avenue main during the 1950 through 1957 period was substantially caused by tuberculation resulting from the continued flow of aggressive Elizabethtown river water through said main.

The cleaning and cement lining of the Maple Avenue main was a repair which restored the original water carrying capacity of the pipes in question. Such pipe was previously and thereafter continued to be used in the normal course of petitioner's operations as a water company. The repair did not form a part of an overall plan of improvement. The cleaning and lining did not materially increase the useful life, value, or structural strength of the pipes involved, nor did it render those pipes suitable for any new or additional use by petitioner.

OPINION.

The issue before us is whether the cost of cleaning and cement lining the Maple Avenue main during 1957 is a deductible repair under section 162(a) [3] and the regulations thereunder,[4] or whether it is a capital expenditure.[5]

The area of repair or capital expenditure is replete with innumerable decisions which struggle unsuccessfully to draw a clear and useful line of general applicability. An expenditure which returns property to the state it was in before the situation prompting the expenditure arose, and which does not make the relevant property more valuable, more useful, or longer-lived, is usually deemed a deductible repair. A capital expenditure is generally considered to be a more permanent increment in the longevity, utility, or worth of the property.

As the Board stated in *Illinois Merchants Trust Co., Executor*, 4 B.T.A. 103, 106:

A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use. The one is a main-

---

[3] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * *

[4] Sec. 1.162–4 [Income Tax Regs.] Repairs.

The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense, provided the cost of acquisition or production or the gain or loss basis of the taxpayer's plant, equipment, or other property, as the case may be, is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall either be capitalized and depreciated in accordance with section 167 or charged against the depreciation reserve if such an account is kept.

[5] SEC. 263. CAPITAL EXPENDITURES.

(a) GENERAL RULE.—No deduction shall be allowed for—

(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *

(2) Any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made.

tenance charge, while the others are additions to capital investment which should not be applied against current earnings. * * *

The cost of keeping property "in an ordinarily efficient operating condition, may be deducted as an expense." Sec. 1.162–4, Income Tax Regs. If the repair does not "*materially* add to the value of the property nor appreciably prolong its life," it may be deducted as an expense. *Ibid.* (Emphasis supplied.) Petitioner asserts that the instant case comes within the purview of these criteria, and we agree.

Respondent contends that the value of the pipe to petitioner was materially increased by the expenditure and that it is, therefore, a capital expenditure. But any properly performed repair adds value as compared with the situation existing immediately prior to that repair. The proper test is whether the expenditure materially enhances the value, use, life expectancy, strength, or capacity as compared with the status of the asset prior to the condition necessitating the expenditure. Comparing the period before tuberculation and after expenditure, we see that the useful life of the Maple Avenue main was not increased by the cleaning and lining and that neither the strength nor the capacity of said main was enhanced.

Respondent is in error when he contends that the expenditure allowed petitioner to put the pipes to a new use. The main continued to be used in the normal course of petitioner's operations as a water company. It is true that water derived from rivers rather than water derived from wells was being used, but the substantial utilization of the pipes was the same, to wit, the conveyance of water to various homes.

Further, the river water could be, and was, used in the relevant pipes without cement lining. Periodic cleanings, clearly deductible ordinary expenses, would allow petitioner to use the Maple Avenue main at full capacity without cement linings. The cement lining was not a permanent addition to the pipe. By lining the pipes, petitioner merely eliminated, temporarily, a maintenance problem. That petitioner chose a less expensive, nonpermanent method of eliminating the tuberculation and restoring the capacity does not establish a new use.

Indeed, respondent has stipulated that the expenditure in question did not establish a new or additional use:

> The cement lining of 16 inch cast iron pipe by petitioner in 1957 did not make the pipe suitable for any new or additional use by petitioner. Such pipe was previously and thereafter continued to be used in the normal course of petitioner's operations as a water company.

We hold that the expenditure in question did not result in a substantial new or additional use for the relevant pipes.[6]

---

[6] Respondent's contention that new value was added to the pipes because of the alleged additional use fails for the same above-discussed reasons.

While an item which would otherwise be classified as a deductible repair may be held capital if it is part of an overall plan of general improvement, we hold that the relevant cleaning and cement lining comprised a very minor part of petitioner's operation and was not part of any general plan.[7]

Respondent offers several cases which, in their factual context, hold that an expenditure should be capitalized. See, e.g., *Bonwit Teller & Co.*, 17 B.T.A. 1019, affirmed in part and reversed in part 53 F. 2d 381 (C.A. 2), certiorari denied 284 U.S. 690; *Teitelbaum* v. *Commissioner*, 294 F. 2d 541 (C.A. 7), affirming a Memorandum Opinion of this Court, certiorari denied 368 U.S. 987; *Hotel Sulgrave, Inc.*, 21 T.C. 619.

We consider other cases, discussed immediately below, to be more in point.

In *Midland Empire Packing Co.*, 14 T.C. 635, the continued operation of a meat packing plant was threatened by oil seepage from a neighboring refinery into the cellar of the plant. Taxpayer lined the basement walls and floors with concrete to restore normal operating condition. We held that the expenditure was a deductible expense, since it did not increase useful life or value to taxpayer, did not provide for changed or enlarged use of the premises, and did not materially add value when compared with the preseepage period. We said at page 641: "The repairs merely served to keep the property in an operating condition over its probable useful life for the purpose for which it was used."

In *Illinois Merchants Trust Co., Executor, supra,* a lowering of the water level of a river exposed part of the wooden pilings upon which a building rested. Dry rot set in which threatened collapse of the building. Taxpayer sawed off the rotted parts and replaced them with concrete supports. The repair also entailed removal of a large part of the building's ground floor and the shoring up of a wall. The Board held the expenditure deductible.

In *Regenstein* v. *Edwards*, 121 F. Supp. 952 (M.D. Ga.), the floor of the third story of landlord's building sagged. After some temporary steps, steel columns and steel crossbeams were installed in order to permanently cure the defect. The court held that the entire expenditure was for the sole purpose of restoring the property to its former condition and allowed the deduction since neither use, value, nor life expectancy was increased.

---

[7] Respondent's alternative contention that the pipes were fully depreciated is without merit. The parties have stipulated that the relevant pipe had not been fully depreciated for Federal income tax purposes and the record supports that fact. There is also no merit in his argument that the amount of depreciation previously claimed bars deduction. The fact that an item is partially depreciated does not result in the disallowance of a deduction for a valid repair. The cement lining did not restore the property within the purview of sec. 263.

In *American Bemberg Corporation*, 10 T.C. 361, affirmed per curiam 177 F. 2d 200 (C.A. 6), we held deductible an approximate $900,000 expenditure for the drilling and filling of land which was undertaken to remedy an underground situation causing cave-ins under taxpayer's building.

In *Kansas City Southern Ry. Co.* v. *United States*, 112 F. Supp. 164 (Ct. Cl.), the taxpayer expended over $116,000 to eliminate the effects of water pockets which had formed under portions of its railroad track. The elimination was accomplished by power-driving wooden poles vertically into the ground at the ends of the railroad ties, a process having beneficial effect for approximately 15 years. Failure to correct the water pocket effects would not have caused a shutdown of the line, but would have made operation at full capacity impossible. The court allowed the deduction and stated that (pp. 165–166):

[T]he railroad track, after the poles were driven, was still just a railroad track, and the parts of it where the poles were driven were no more useful than the other parts which had not needed this work.

See Rev. Rul. 54–356, 1954–2 C.B. 82, in which respondent agreed with this case.

Respondent argues that the need for an expenditure in the cases discussed above resulted from an unexpected happening or unusual circumstance. He asserts that the expenditure in the instant case was capital because the need for it arose from a management decision. We do not understand respondent to argue that the expenditure was not "ordinary" or "necessary" as used in section 162(a). We do not find that petitioner expected in 1950 that there would be a need for a cement lining. Indeed, in 1954 petitioner merely cleaned the relevant pipe, did not line it until 1957, and the tuberculation could have been removed by periodic cleaning.

We do not agree that the deduction in the instant case requires a relatively sudden, unexpected, or unusual external factor which results in casualty damage. In *Kansas City Southern Ry. Co.* v. *United States, supra*, a deduction was allowed for the elimination of water pockets under railroad tracks. The water pockets were not relatively sudden, unexpected, or unusual occurrences (Id. at p. 165):

Water pockets developed from time to time in the subgrade of the railroad track at various locations. * * * If the nature of the soil is such that the water becomes trapped in the subgrade, the subgrade becomes and remains soft and yielding * * *

In *J. H. Collingwood*, 20 T.C. 937, we allowed an ordinary business expense deduction for the cost of farm-land terracing. The need for the expenditure arose from a soil erosion situation which had been occurring for some time. We held that the purpose of the expenditure was to maintain the farm in an ordinary efficient condition. We

allowed the deduction even though the soil erosion was not at all the unusual, unexpected, or sudden factor which respondent claims is requisite. See also *Farmers Creamery Co. of Fredericksburg, Va.,* 14 T.C. 879; *Buckland v. United States,* 66 F. Supp. 681 (D. Conn.).

We have given full consideration to the entire factual context of the instant case. The useful life, strength, value, and capacity of the cleaned and lined water pipes were not increased by the expenditure in issue. Said expenditure did not make the relevant water main suitable for any new or additional use. Said main continued to be used in the normal course of petitioner's operations as a water company. Viewing the record as a whole, we hold that the cleaning and cement lining of the Maple Avenue main in 1957 was a repair, the cost of which is deductible under section 162 (a).

*Decision will be entered under Rule 50.*