JERRY R. AND JOYCE R. JACKS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jacks v. Commissioner
Docket No. 29297-87.
United States Tax Court
T.C. Memo 1988-237; 1988 Tax Ct. Memo LEXIS 267; 55 T.C.M. (CCH) 968; T.C.M. (RIA) 88237; May 26, 1988. Jerry R. Jacks, pro se. Karen Quesnel, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined a deficiency in petitioners' joint Federal *268 income tax liability for 1985 and additions to tax as follows: Additions to Tax
Deficiency
Sec. 6652 [1]
Sec. 6653(a)
Sec. 6661
$ 7,983
$ 200.00
$ 399.00
$ 1,995.75
Some issues have been settled. The issues remaining for decision are: (1) Whether certain costs relating to the operation of a CAT loader are currently deductible repair expenses or whether they are nonreductible capital expenditures, (2) whether petitioners are liable for the additions to tax under section 6661. Respondent has conceded the section 6653(a) addition to tax. [2]
FINDINGS OF FACT
*269 Some of the facts have been stipulated and are so found. Petitioners resided in Las Vegas, Nevada, at the time they filed their petition in this case. Since 1969, petitioner Jerry R. Jacks has owned and operated as a sole proprietorship a general engineering and construction company licensed to do business in Nevada. [3] The company works primarily on a contract basis for the cities of Las Vegas, North Las Vegas, and Henderson, Nevada, constructing, improving, and maintaining streets, parking lots, and sewers. Petitioner's company owns two scrapers, a number of trucks, a back-hoe, and a number of loaders, including a 70-ton, 12-cylinder diesel CAT loader. Petitioner purchased the CAT loader from Cushman Equipment and Construction Company in 1979 for $ 40,000. At the time of purchase by petitioner, the CAT loader was five years old, and the $ 40,000 purchase price reflected its used value. In 1979, the cost of a comparable new CAT loader was $ 530,000. Over the course of the next six years, petitioner used the CAT loader in his business and depreciated it over a seven-year life for Federal income tax *270 purposes. The adjusted tax basis of the loader as of January 1, 1985, was $ 3,271. In June of 1985, the CAT loader's transmission gear malfunctioned. The forward gears still worked, but the loader would not move when the reverse gear was engaged. To fix the transmission, petitioner purchased for $ 17,500 a used transmission for a CAT loader. The used transmission petitioner purchased was not rebuilt or reconditioned. A rebuilt or reconditioned transmission would have cost significantly more than $ 17,500. The guarantee that went with the used transmission was only that it would function properly at the time of installation. The operation of the used transmission after its installation in petitioner's CAT loader was not covered by any guarantee or warranty. In a July 1985 incident unrelated to the transmission problem, the rod bearings on two of the engine cylinders of petitioner's CAT loader "went out." In order to fix the engine, petitioner did not purchase a new or rebuilt engine, because a rebuilt engine would have cost approximately $ 90,000, not including installation. Instead, petitioner purchased two rebuilt rod bearings and two rebuilt pistons, a rebuilt crankshaft, *271 and new crankshaft bearings. Petitioner's company performed the labor to install these parts. While working on the engine, petitioner's company also decided to replace the other 10 pistons and rings. The total cost of the parts used in restoring the engine to operating condition was $ 15,437.62. Since 1985, petitioner's CAT loader has operated with routine maintenance. Petitioner claimed the cost of the 1985 transmission and engine repairs as ordinary and necessary business expenses on Schedule C of his 1985 tax return. On audit, respondent disallowed these costs as currently deductible business expenses and treated them as capital expenditures. Petitioner was allowed a depreciation deduction with respect to those costs for 1985. OPINION Costs of improvements to property that are incurred to significantly increase the value of property or to appreciably prolong the useful life thereof are not regarded as currently deductible business expenses but as capital expenditures. Sec. 263(a); sec. 1.162-4, Income Tax Reg. On the other hand, costs of repairs to *272 property that are incurred to keep property in an ordinarily efficient operating condition are deductible in the year incurred. Sec. 1.162-4, Income Tax Regs. The proper test to resolve this repair-versus-improvement issue is whether the expenditure in question materially enhances the value, use, life expectancy, or capacity of the property as compared with the status of the property prior to the condition necessitating the expenditure. Wolfsen Land & Cattle Co. v. Commissioner,72 T.C. 1, 14-17 (1979); Plainfield-Union Water Co. v. Commissioner,39 T.C. 333, 337-338 (1962). The distinction between deductible repairs and capital improvements is described in Illinois Merchants Trust Co., Executor of Estate of Manierre v. Commissioner,4 B.T.A. 103, 106 (1926), as follows: In determining whether an expenditure is a capital one or is chargeable against operating income, it is necessary to bear in mind the purpose for which the expenditure was made. To repair is to restore to a sound state or to mend, while *273 a replacement connotes a substitution. A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use. The one is a maintenance charge, while the others are additions to capital investment which should not be applied against current earnings. * * * Expenditures incurred to replace mere parts of a whole, not to replace an entire structural unit are often regarded as repairs, not capital improvements. Red Start Yeast & Products Co. v. Commissioner,25 T.C. 321, 348-350 (1955). But the costs of purchasing new or rebuilt motors for trucks and heavy equipment generally are regarded as capital expenditures. *274 West Va. Steel Corp. v. Commissioner,34 T.C. 851, 859 (1960). [4]
With regard to the cost of the transmission repair, the critical facts were described by petitioner. Before the transmission broke down, the CAT loader had a working but used transmission. After petitioner incurred the expenses in question, the CAT loader still had a used transmission, not a rebuilt or reconditioned transmission. The transmission repair was not undertaken to improve the value of the CAT loader or to prolong its useful life. It was simply a repair to restore the loader to the operating condition it was in prior to the necessity of incurring the expense. The transmission repair also was unrelated to the overhaul of the engine. The expenditures relating to the overhaul of the engine are regarded as capital in nature. Those expenditures represented more than a repair of the existing defect in the engine. *275 Rather than merely repairing the defect in the engine, petitioner gave the engine a major overhaul replacing essentially all the major parts of the engine except the block. On the facts before us, we conclude that the rebuilt engine materially extended the useful life of petitioner's CAT loader. The benefits associated with the rebuilt engine would accrue to petitioner over a number of years and therefore it is appropriate that the related costs be recovered over a similar period.
Section 6661(a) imposes an addition to tax of 25 percent of the amount of any underpayment of income tax attributable to a substantial understatement. [5] A substantial understatement occurs where the amount of the understatement exceeds the greater of 10 percent of the correct tax liability or $ 5,000. Sec. 6661(b). In light of the resolution of the issues in this case, it is not clear whether either of these requirements will be satisfied. Upon making their Rule 155 computations, the parties are to notify the Court whether the section 6661 addition to tax is still at issue. If it is, the Court at that time *276 will issue an order with respect thereto. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, and all Rule references to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioners also raise an issue concerning the $ 200 in additions to tax determined by respondent under section 6652. The additions relate to petitioners' failure to file Forms 1099-MISC with respect to payments made in 1985 to four contract workers. Because we have no jurisdiction over additions to tax determined under section 6652, we do not consider this issue. ↩
3. Hereinafter, references to petitioner are to Jerry R. Jacks. ↩
4. See LaSalle Trucking Co. v. Commissioner,T.C. Memo. 1963-274↩ (costs of replacing engines and tanks in a fleet of petroleum hauling trucks held to be capital improvements where the replacement engines and tanks extended the useful lives of the trucks). 5. See Pallottini v. Commissioner,90 T.C. 498↩ (1988) (slip op. at 9).