T.C. Memo. 2000-351

UNITED STATES TAX COURT

KENNETH G. SCHLADWEILER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6167-98.                          Filed November 13, 2000.

Kenneth G. Schladweiler, pro se.

Blaine C. Holiday, for respondent.

MEMORANDUM OPINION

MARVEL, Judge:  Respondent determined the following
deficiencies and accuracy-related penalties with respect to
petitioner's Federal income taxes:

| Year | Deficiency | Accuracy-related penalty - sec. 6662[1] |
|------|-----------|------------------------------------|
| 1992 | $4,053 | $811 |
| 1993 | 3,612 | 722 |
| 1994 | 4,732 | 946 |

After concessions, discussed infra, the issues for decision are:

(1)  Whether petitioner may deduct business expenses claimed in connection with his trucking/hauling business in excess of those allowed by respondent; and

(2)  whether petitioner is liable for the accuracy-related penalty under section 6662 for each of the years at issue.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference.

Petitioner resided in Mitchell, South Dakota, on the date he filed his petition in this case.

Petitioner timely filed his Federal income tax returns for each of the taxable years 1992, 1993, and 1994.  Each return contained a Schedule C, Profit or Loss From Business, reporting income and expenses claimed by petitioner from the

---

[1]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts have been rounded to the nearest dollar.

trucking/hauling business he operated as a sole proprietorship during each of the years at issue.

Respondent audited petitioner's Federal income tax returns for 1992, 1993, and 1994.  By notice of deficiency dated January 26, 1998, respondent determined that the following adjustments to petitioner's Schedule C expenses were required:

|                  | 1992     | 1993     | 1994      |
| ---------------- | -------- | -------- | --------- |
| Car & truck      | $4,170   | $5,109   | --        |
| Depreciation     | (1,630)  | (2,609)  | ($4,145)  |
| Drivers exp.     | --       | --       | 2,522     |
| Fuel             | 2,601    | 242      | 4,528     |
| Insurance        | 170      | 498      | (29)      |
| Legal            | (85)     | (148)    | (167)     |
| Meals            | 2,329    | 1,642    | 1,021     |
| Plates & comp.   | (1,132)  | --       | 813       |
| Repairs          | 8,276    | 4,748    | 12,041    |
| Tires            | --       | (2,644)  | (203)     |
| Utilities        | --       | --       | 434       |
| Self-employ.     | (1,038)  | (1,099)  | (1,187)   |

Respondent also determined that petitioner had additional gross receipts of $8,717 for 1993 and unreported interest income of $125 for 1994 and that petitioner was liable for the accuracy-related penalty in each of the years in issue.

Petitioner conceded, or does not dispute, the adjustments to gross income, insurance, legal, license plates and compensation, and tires.  The adjustment concerning interest income is deemed conceded because petitioner offered no evidence concerning the adjustment.

On brief, respondent conceded the driver expense adjustment for 1994 and portions of the meal and repair expense adjustments

for each year. Respondent also acknowledges that the allowance for depreciation must be recomputed due to the allowance of additional repair expenses that respondent previously classified as capital expenses.

Discussion

We address each of the remaining disputed adjustments below.

Car and Truck Expenses

On his Federal income tax returns for the years at issue, petitioner claimed the following with respect to car and truck expenses:

1992 - Petitioner claimed that he drove a pickup truck 67 percent for business during 1992. He also claimed that he drove the pickup 22,194 miles, of which 14,892 were business miles, and 7,302 were personal (noncommuting) miles. On his Schedule C, he claimed car and truck expenses of $4,170. The deduction was calculated using the standard mileage rate for 1992.

1993 - Petitioner claimed that he drove an automobile 74.4 percent for business during 1993. He also claimed that he drove the car 24,522 miles in 1993, of which 18,245 were business miles and 6,277 were personal (noncommuting) miles. On his Schedule C, he claimed car and truck expenses of $5,109. The deduction was calculated using the standard mileage rate for 1993.

At trial, petitioner testified that he used a 1979 Ford pickup truck and a 1979 Mercury Cougar for his business travel.

He calculated the deduction for car and truck expenses by taking the opening odometer reading on January 1 and the ending odometer reading on December 31, calculating the annual mileage, and applying the standard mileage rate to the annual mileage driven. Contrary to the position taken on his tax returns, petitioner testified that he drove the vehicles for business purposes only and that part of the mileage may have been commuting miles. Petitioner did not keep a mileage log or any other records that would have enabled respondent to determine the total mileage driven by petitioner during 1992 and 1993 and how much of that mileage was for business use.

Ordinarily, a taxpayer is permitted to deduct the ordinary and necessary expenses that he pays or incurs during the taxable year in carrying on a trade or business. See sec. 162(a). A taxpayer is required to maintain records sufficient to establish the amount of his deductions. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. When a taxpayer establishes that he paid or incurred a deductible expense, but does not establish the amount of the deduction, we may estimate the amount allowable in some circumstances. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). There must be sufficient evidence in the record, however, to permit us to conclude that a deductible expense was incurred in at least the amount allowed. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In estimating the

amount allowable, we bear heavily upon the taxpayer whose inexactitude is of his or her own making. See Cohan v. Commissioner, supra at 544.

For certain kinds of business expenses, such as travel, meal, and entertainment expenses, and those expenses attributable to "listed property", section 274(d) overrides the rule of Cohan v. Commissioner. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Under section 274(d), a taxpayer must satisfy strict substantiation requirements before a deduction is allowable. See sec. 274(d); sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. If section 274(d) applies, we may not use the Cohan doctrine to estimate a taxpayer's expenses covered by that section.

The substantiation requirements of section 274(d) apply to any listed property described in section 280F(d)(4). Listed property includes passenger automobile and any other property used as a means of transportation, see sec. 280F(d)(4)(A)(i) and (ii), unless excepted by section 280F(d)(4)(C) or (d)(5)(B). Petitioner's pickup truck and car are listed property, and, consequently, section 274(d) applies to the car and truck expenses claimed by petitioner in 1992 and 1993.

To obtain a deduction for travel expenses under section 274, a taxpayer must substantiate the amount of the expense, the time

and place of the use, and the business purpose of the use by adequate records or sufficient evidence to corroborate the taxpayer's own statement. See sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Adequate records for purposes of section 274(d) include an account book, diary, log, statement of expense, trip sheets, or similar records. See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). If a taxpayer does not substantiate the travel expense as required by section 274(d), he is not entitled to a deduction for the expense no matter how plausible it may be that he paid the expense. For expenses covered by section 274, the proposition is simple--a taxpayer who cannot prove the expense loses the deduction.

In this case, petitioner offered no probative evidence as required by section 274(d) to substantiate his car and truck expenses. The only evidence in the record is petitioner's general testimony concerning his use of the two vehicles and some odometer readings for 1993, which are not consistent with the mileage claimed on petitioner's 1993 return. This evidence falls far short of the substantiation required by section 274(d). Respondent's determination as to petitioner's claimed car and truck expenses, therefore, must be sustained.

Fuel Expenses

Petitioner claimed fuel expenses of $25,864, $17,982, and $24,041, respectively, on his 1992, 1993, and 1994 Federal income tax returns. In the notice of deficiency, respondent disallowed a portion of the fuel expenses paid in each year--$2,601 for 1992, $242 for 1993, and $4,528 for 1994. Respondent asserts that petitioner failed to substantiate the actual payment of the expense in some cases and the business purpose for the payment in others. Petitioner's documentation of his disallowed fuel expenses, as described by respondent, included receipts for unleaded gasoline and checks written to gas stations/convenience stores with no receipts to indicate what, if anything, was purchased. Petitioner did not offer the documentation into evidence. Petitioner's dump truck used diesel fuel, so we can only conclude, based on respondent's description of petitioner's documentation, that the receipts for unleaded gasoline related to one of petitioner's other vehicles.

Petitioner has failed to prove that he is entitled to fuel expense deductions in excess of those allowed by respondent.

Meals

Petitioner claimed he paid $3,484, $1,965, and $1,222 for business meals in 1992, 1993, and 1994, respectively, of which he deducted $2,787, $1,572, and $611 after applying the applicable percentage limitation of section 274(n). Because petitioner was

unable to substantiate the expenses claimed, respondent allowed petitioner a $26 per diem amount for each night he was out of town.

The notice of deficiency allowed a deduction of $458 for meals for 1992 after applying the section 274(n) limitation. Because petitioner presented no records for 1993 or 1994 during the audit, respondent allowed a comparable percentage (16.43 percent) of the claimed meal expenses for 1993 and 1994. Based on documentation submitted to respondent subsequent to trial, respondent conceded on brief that petitioner was out of town on business 65 nights in 1992 and 23 nights in 1993. The total amount conceded by respondent for 1992 meal expense is $1,612, resulting in an allowable deduction for meals of $1,290 after the 20-percent limitation of section 274(n). The total amount conceded by respondent for 1993 meal expense is $598, resulting in an allowable deduction for meals of $478 after the 20-percent limitation.

With respect to petitioner's claimed meal expenses for 1994, respondent has conceded that petitioner is entitled to a per diem meal allowance of $26 per day for each night petitioner stayed overnight at a motel during 1994. Petitioner submitted motel receipts at trial which demonstrate that petitioner occupied a motel room in connection with his business 25 nights during

1994.[2]  Petitioner's 1994 meal expense is $650, resulting in an allowable deduction for meals of $325 after the 50-percent limitation of section 274(n)(1).

Our review of the record in this case confirms that respondent's concessions as to meals consumed by petitioner are reasonable under the circumstances.  Respondent's concessions, however, do not cover petitioner's drivers who, like petitioner, incurred hotel and meal expenses in connection with petitioner's business, which petitioner claims he paid.  The documentation reviewed and summarized by respondent in Appendix 1 to respondent's brief confirms that petitioner had motel receipts reflecting that three of petitioner's drivers stayed overnight at a motel 44 nights during 1992 and 3 nights during 1993.  Unfortunately, petitioner introduced no evidence to show whether and in what amount he reimbursed those drivers for their food costs during 1992 and 1993.  Because we have no factual record regarding petitioner's possible reimbursement of his drivers' meals during 1992 and 1993, we cannot determine whether petitioner is entitled to additional deductions for meals in 1992

---

[2]One of the motel receipts was indecipherable and, consequently, is not taken into account in our calculation of the number of nights petitioner stayed in a motel during 1994 on business.  Other receipts showed that one of petitioner's drivers, Raymond Whitmore, also rented a room on the same dates and at the same motel as petitioner.  Mr. Whitmore was reimbursed by petitioner during 1994 for lodging and meals, and respondent has conceded that petitioner is entitled to the deduction claimed for the reimbursement.

and 1993. Consequently, we sustain respondent's determination as modified.

Repairs

Petitioner claimed repair expenses of $28,903, $41,792, and $30,917 for 1992, 1993, and 1994, respectively. In his notice of deficiency, respondent determined that the claimed amounts should be reduced by $8,276, $4,748, and $12,041, respectively.

Of the repair expenses disallowed for 1992, $203 was disallowed for failure to substantiate either the payment of the expense or its business purpose, and the balance was reclassified by respondent as capital expenses. The expenses reclassified as capital expenses were for wheels and axles installed on petitioner's dump truck and related work billed to petitioner in a 1992 invoice[3] totaling $10,324. Based on petitioner's posttrial submission, respondent has conceded that $4,143 of the invoiced amount is deductible and that only $6,181 ($10,324 minus $4,143) must be capitalized.

Of the amount disallowed for 1993, respondent concedes on brief that an additional $60 has been substantiated as to amount and business purpose. The balance of the adjustment is attributable to a $3,800 downpayment made by petitioner in 1993

_____

[3]In his memorandum brief, respondent described this invoice as a 1994 invoice. Although the invoice is not in evidence, we have treated respondent's position on brief as a concession with respect to 1992, and we have assumed that the invoice documented 1992 repairs, consistent with respondent's position on brief.

for a new box for his truck; the box was not delivered or placed in service until 1994. Petitioner has failed to prove that respondent's determination for 1993, as adjusted, is erroneous.

In 1994, one of petitioner's drivers, Raymond Whitmore, was in an accident with petitioner's truck. The truck rolled over and required extensive repairs. Also in 1994, petitioner paid the balance of the cost of the new truck box ordered in 1993.

Petitioner submitted documentation to respondent of $46,067 to substantiate repair expenses of $30,917 claimed on his 1994 return. The documentation as to $1,863 of the expenses failed to substantiate the business purpose of the expense. Of the remaining documentation, respondent determined that $25,328 was for capital expenditures subject to depreciation; that is, the remaining purchase price of the box ordered in 1993 and delivered in 1994 and the cost of repairing petitioner's truck after the accident.[4]

Petitioner offered no credible evidence to demonstrate that respondent's determination to capitalize the cost of the truck box was in error. Consequently, we sustain respondent on this part of his adjustment to petitioner's repair expense deduction. We reach a different conclusion regarding respondent's

---

[4]According to respondent's brief, the repair adjustment was calculated as follows: $46,067 submitted, minus $1,863 not substantiated, minus $25,328 capitalized, equals $18,876 allowed. The $30,917 claimed on the return, minus $18,876 allowed, equals an adjustment of $12,041.

determination that repairs to petitioner's truck, necessitated by an accident in 1994, must be capitalized.

Expenses incurred to maintain property used in a trade or business in efficient operating condition ordinarily are deductible. See sec. 162(a); <u>Jacks v. Commissioner</u>, T.C. Memo. 1988-237; <u>Gilles Frozen Custard, Inc. v. Commissioner</u>, T.C. Memo. 1970-73. Likewise, the cost of repairs "which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense". Sec. 1.162-4, Income Tax Regs.; see also sec. 1.263(a)-1(b), Income Tax Regs. ("Amounts paid or incurred for incidental repairs and maintenance of property are not capital expenditures").

Although it is not always easy to delineate when an expenditure is a deductible repair or a capital expenditure that permanently improves property and increases its value, see section 263, the standard that we must use to evaluate a particular expenditure is well established. In <u>Plainfield-Union Water Co. v. Commissioner</u>, 39 T.C. 333, 337 (1962), we described the standard as follows:

> An expenditure which returns property to the state it was in before the situation prompting the expenditure arose, and which does not make the relevant property more valuable, more useful, or longer-lived, is usually deemed a deductible repair. A capital expenditure is generally considered to be a more permanent increment in the longevity, utility, or worth of the property.

That description of the standard is consistent with that articulated by the Board of Tax Appeals in Estate of Manierre v. Commissioner, 4 B.T.A. 103, 106 (1926):

> A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition.  It does not add to the value of the property, nor does it appreciably prolong its life.  It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired.  Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use. * * *

There is no dispute in this case that the expenditures in question were necessitated by an accident that occurred in August 1994.  One of petitioner's drivers was driving petitioner's truck when it jackknifed and slid into a ditch causing substantial damage to the truck.  Petitioner, appearing pro se, testified at trial, in response to a question from the Court, that the expenditures were "to get [the truck] * * * to its original shape before it was rolled."  Petitioner further testified that he consulted with his return preparer about the expenditure and was informed that "as long as * * * [the truck] wasn't better than it was, just put * * * [the truck] back so it was in workable shape", the expenditure was deductible.  Respondent offered no evidence to refute petitioner's testimony, which we found to be credible.

We hold that the portion of petitioner's repair expenses paid in 1994 to repair the damage from the 1994 accident is deductible under section 162(a).

Depreciation

Respondent determined that petitioner was entitled to additional depreciation deductions of $1,630, $2,609, and $4,145 in 1992, 1993, and 1994, respectively. The adjustments are attributable to respondent's determinations that certain of petitioner's repair expenses must be capitalized and depreciated. In view of our holding regarding petitioner's repair expenses, petitioner's depreciation deductions for the years in issue must be decreased to reflect respondent's concessions and our ruling on the deductibility of the 1994 accident repairs to petitioner's truck.

Utilities

Petitioner claimed a utility expense deduction of $1,429 for 1994. Petitioner lived with his parents when he was not traveling on business, but he did not pay any rent or contribute on any regular schedule to the family's household expenses. Petitioner testified that he occasionally paid his parents' utility (phone, sewer, and water) bills in order to reimburse them for the additional costs resulting from his use of their electricity, water, and phones for his business. Petitioner used his parent's water to wash his trucks. He used their electricity

to run his steam cleaner, welder, and air compressor and to charge his trucks in the winter. Petitioner used their phone for long-distance business calls. Petitioner documented that he paid $846 of his parents' phone bills and $591 of his parents' utility bills.

In the notice of deficiency, respondent allowed petitioner some deductions for utilities. Respondent calculated the allowance for telephone costs by subtracting from the phone expenses paid the estimated annual cost of basic residential coverage ($110) and then allowing petitioner a deduction equal to 75 percent of the balance expended by petitioner. Respondent calculated the allowance for electricity and water by allowing petitioner a deduction equal to 75 percent of the balance expended by petitioner.[5]

Under the circumstances, the amount allowed by respondent for utilities is reasonable. Petitioner did not keep precise records of the utilities used by his business. In fact, because of the loose reimbursement arrangement petitioner had with his

---

[5]On brief, respondent states that he determined the amount to be disallowed as follows: Of the $2,755 of documentation submitted, $1,318 reflected expenses paid by petitioner's parents, $110 was the cost of basic phone coverage, and $332 was treated as allocable to personal use. The adjustment was determined by subtracting from the amount claimed on petitioner's 1994 return, $1,429, the amount respondent calculated was allowed, $995, resulting in an adjustment of $434, rounded.

parents, it is impossible to reconstruct, with any reliability, the cost of utilities used by petitioner's business in 1994.

We sustain respondent's determination as to utilities.

<u>Accuracy-Related Penalties</u>

Respondent has proposed accuracy-related penalties against petitioner for each of the years in issue.

Section 6662(a) authorizes respondent to impose a penalty in an amount equal to 20 percent of the underpayment attributable to negligence or disregard of rules or regulations. Negligence is defined as "any failure to make a reasonable attempt to comply with the provisions of * * * [the Internal Revenue Code]". Sec. 6662(c); see also <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985) (negligence is lack of due care or failure to do what a reasonable and prudent person would do under the circumstances). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Disregard of rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. See sec. 1.6662-3(b)(2), Income Tax Regs. A taxpayer is not liable for the penalty if he shows that he had

reasonable cause for the underpayment and that he acted in good faith. See sec. 6664(c).

Petitioner failed to maintain adequate records to substantiate the deductions he claimed on his Schedules C for the years at issue. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. He offered no evidence at trial to explain this failure. Accordingly, we hold that petitioner is liable for accuracy-related penalties under section 6662(a) for any year in issue for which he is liable for a deficiency, in amounts to be calculated in accordance with this opinion.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.