T.C. Summary Opinion 2008-62

UNITED STATES TAX COURT

DOUGLAS LEROY AND NANCY HELENE MAXFIELD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8135-06S.                    Filed June 3, 2008.

Douglas Leroy and Nancy Helene Maxfield, pro se.

<u>Kelly R. Morrison-Lee</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.
Pursuant to section 7463(b), the decision to be entered is not
reviewable by any other court, and this opinion shall not be
treated as precedent for any other case.  Unless otherwise
indicated, subsequent section references are to the Internal

Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case is before the Court for review of respondent's determination sustaining a levy action to collect a $16,351 tax deficiency determined and assessed for tax year 1999. The Court previously concluded in <u>Maxfield v. Commissioner</u>, T.C. Summary Opinion 2007-79, filed May 22, 2007, that respondent abused his discretion in not permitting petitioners an opportunity to dispute the underlying tax liability at the collection due process hearing. The case was set for further trial to consider the issues raised with respect to the underlying tax liability.

After concessions,[1] the issues for decision are: (1) Whether petitioners are entitled to business expense deductions for Common Sense Consultants, Inc. (CSCI),[2] in amounts greater than respondent allowed for tax year 1999; (2) whether petitioners overreported the gross receipts of CSCI in 1999; and (3) whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for 1999.

---

[1] The parties agree that petitioners may deduct $20,248 in home mortgage interest and real estate taxes on Schedule A, Itemized Deductions, and may not deduct those amounts as business expenses on Schedule C, Profit or Loss From Business. At trial, petitioner Douglas Maxfield conceded that petitioners are not entitled to a claimed $310 deduction for political contributions reported on Schedule C.

[2] Despite its name, Common Sense Consultants, Inc. (CSCI), was not incorporated; rather, petitioner Douglas Maxfield operated CSCI as a sole-proprietorship.

## Background

Some of the facts have been stipulated and we so find.  The record consists of the stipulation of facts, and first and second supplemental stipulations of facts, all with attached exhibits; additional evidence introduced at trial; and the testimony of petitioner Douglas Maxfield and petitioners' daughter, who prepared and electronically filed the 1999 Federal income tax return for petitioners.

Petitioners resided in Maryland when they filed the petition.  Petitioner Helene Maxfield worked as a secretary in 1999.  Petitioner Douglas Maxfield (hereafter petitioner) was retired in 1999.

Respondent determined a $13,626 deficiency in petitioners' 1999 Federal income tax and a $2,725 accuracy-related penalty under section 6662(a).  Respondent mailed a notice of deficiency to petitioners on March 6, 2003.  Petitioners did not file a timely petition for redetermination of the notice of deficiency, and respondent assessed the deficiency, together with statutory interest and the section 6662(a) accuracy-related penalty, on August 4, 2003.

Respondent mailed to petitioners a Final Notice - Notice Of Intent To Levy And Notice Of Your Right To A Hearing (levy notice) on July 5, 2004.  Petitioners timely submitted Form 12153, Request for a Collection Due Process Hearing.  Petitioners

sought to dispute the underlying tax liability at the Appeals Office collection hearing. The Appeals officer did not consider the underlying tax liability. Following the hearing, the Appeals officer mailed a blank Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, to petitioners and allowed more than a month for petitioners to provide the financial information necessary for the Appeals officer to consider any collection alternatives. Petitioners did not submit any financial information and did not propose any specific collection alternatives. On April 20, 2006, respondent sustained the levy action in a Notice of Determination Concerning Collection Action(s) Under Section 6320 and 6330.

At the initial trial of this case, the parties stipulated that respondent mailed a notice of deficiency to petitioners on March 6, 2003, and respondent argued that, pursuant to section 6330(c)(2)(B), petitioners were not entitled to dispute the underlying tax liability because respondent had mailed a notice of deficiency to petitioners at their last known address. However, after considering petitioner's testimony and other evidence submitted at trial, we concluded that: (1) Petitioners rebutted the presumption of delivery of the notice of deficiency for 1999, (2) petitioners did not otherwise have an opportunity to dispute the underlying tax liability, and (3) respondent

abused his discretion by not allowing petitioners an opportunity to challenge the underlying tax liability.[3]

The deficiency results from disallowed deductions claimed on Schedule C, Profit or Loss From Business. Petitioners claimed $71,447 in business expense deductions for CSCI on Schedule C for 1999. Respondent allowed $10,891 as ordinary and necessary business expenses and disallowed the remaining $60,556.[4] Respondent also determined an accuracy-related penalty under section 6662 of $2,725.20. At trial, petitioner attempted to explain and substantiate the claimed deductions. He also asserted that the computer software used to prepare the tax return, TurboTax, injected numerous errors into the return (claiming several deductions more than once and overstating the gross receipts of CSCI).

Petitioner stated that CSCI provided paralegal and construction services in 1999 and that he intended to begin a commercial fishing activity under CSCI in 1999 but that he did not actually start that business in 1999. Respondent disallowed

---

[3] Maxfield v. Commissioner, T.C. Summary Opinion 2007-79, filed May 22, 2007.

[4] Respondent disallowed deductions totaling $62,132. However, as a result of that adjustment, CSCI showed a net profit, which entitled petitioners to some allowance for expenses for the business use of their home. The $1,576 allowed was based on a pro rata allocation of insurance, utilities, and depreciation.

all deductions claimed for expenses related to construction and boating and fishing activities.

## Discussion

### I. Standard of Review

In the context of judicial review of a notice of determination sustaining a collection action, where, as here, there is no showing that a taxpayer received a notice of deficiency or otherwise had an opportunity to dispute the tax liability, the proper standard of review of the Commissioner's determination of the underlying tax liability is de novo. See Sego v. Commissioner, 114 T.C. 604, 609-610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

### II. Burden of Proof

Generally, the burden of proof is on the taxpayer. Rule 142(a)(1). Under section 7491(a)(1), if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability, the burden of proof shifts from the taxpayer to the Commissioner as to that factual issue. At trial petitioner argued that the burden should shift because he produced sufficient evidence to prove that he incurred the expenses claimed as deductions but disallowed by respondent.

However, section 7491(a)(2) provides that the burden will shift only if the taxpayer complies with substantiation requirements, maintains sufficient records, and cooperates fully

with the Commissioner's reasonable requests. Although petitioners vigorously asserted their rights when audited, such actions, without more, do not evince a lack of cooperation. Additionally, petitioners introduced a plethora of documents to substantiate the expenses claimed as business deductions.

To shift the burden, not only must a taxpayer comply with the substantiation requirements and cooperate with the Commissioner's reasonable requests, but he must also maintain all records required under the Internal Revenue Code. Sec. 7491(a)(2)(B). A taxpayer must "keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe." Sec. 6001. Pursuant to section 6001, a taxpayer is required to "keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters". Sec. 1.6001-1(a), Income Tax Regs.

When a taxpayer's records have been lost or destroyed through circumstances beyond his control, he is entitled to substantiate deductions by reconstructing his expenditures through other credible evidence. Smith v. Commissioner, T.C.

Memo. 1998-33; see also <u>Malinowski v. Commissioner</u>, 71 T.C. 1120, 1125 (1979). Permissive reconstruction is intended for the loss of records by casualty. See <u>Silverton v. Commissioner</u>, T.C. Memo. 1977-198, affd. without published opinion 647 F.2d 172 (9th Cir. 1981); sec. 1.274-5A(c)(5), Income Tax Regs. Failure to maintain adequate records in the first instance, however, is not a loss of records through casualty or circumstances outside the taxpayers' control such that reconstruction must be allowed.

Petitioner did not maintain or produce books of account or records reflecting the income from his business activities. He relies on bank statements, credit card statements, some invoices, and handwritten summaries to support his business expenses. Further, the credit card statements and other documents petitioner introduced suffice to prove only that petitioner purchased items at specific stores. These records do not show the particular items petitioner purchased, and they do not demonstrate that the items purchased were ordinary and necessary expenses for the carrying on of any trade or business in 1999. See sec. 162(a).

We conclude that petitioner did not maintain adequate records clearly reflecting the income and expenses of his business activities, that he is not entitled to reconstruct records which never existed, and that the documents he introduced are not sufficient to prove his claimed business expenses. The

burden does not shift to respondent under section 7491(a). Petitioners, therefore, retain the burden of proving they are entitled to the deductions claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

III.  Underlying Tax Liability

    A.  Schedule C Deductions

       1.  Legal Principles

Taxpayers may generally deduct the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162(a); see also Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971); FMR Corp. & Subs. v. Commissioner, 110 T.C. 402, 414 (1998).  An ordinary and necessary expense is one that is appropriate and helpful to the taxpayer's business and that results from an activity that is common and accepted practice.  Boser v. Commissioner, 77 T.C. 1124, 1132 (1981), affd. without published opinion (9th Cir., Dec. 22, 1983).

A sine qua non of claiming deductions under section 162 is that the expenses directly relate to an active trade or business at the time the expenses were incurred.  Glotov v. Commissioner, T.C. Memo. 2007-147.  Respondent does not dispute that petitioner's paralegal service activity qualifies as a trade or business.  Respondent does not agree, however, that petitioner's

boating and fishing and construction activities qualify as a trade or business.

###### 2. Boating and Fishing Activity

Petitioner testified that he did not conduct any boating and fishing activity commercially in 1999, at least in part because of his poor health.  Petitioner's testimony is consistent with statements he made to respondent's examining agent that he started operating a charter boat service in 2001.  We find that petitioner was not engaged in any boating and fishing activity in 1999 and conclude that petitioners are not entitled to any deductions related to operating such an activity in 1999.[5]

###### 3. Construction and Home Improvement Activity

Petitioner's testimony with regard to his operation of a construction and home improvement activity in 1999 was vague.  Most importantly, although the record includes reference to some addresses where petitioner may have performed certain construction tasks, the record does not reflect that petitioner performed any construction work for compensation.[6]  Petitioner

---

[5] On the 1999 return, petitioners did not make an election under sec. 195 to expense start-up costs for a boating and fishing activity.  An election under sec. 195 permits a limited deduction only in the taxable year in which an active trade or business begins.  Sec. 195(b)(1)(A).  Petitioner began his boating and fishing activity sometime after 1999.  Thus, even an election under sec. 195 would not assist petitioners for tax year 1999.

[6] Significantly, some of the locations where petitioner
(continued...)

did not introduce any evidence that he operated a construction business for profit in 1999.  Because petitioner failed to demonstrate that any construction-related expenses are directly connected with, or proximately result from, his active conduct of any trade or business in 1999, we hold that petitioners are not entitled to deduct any expenses related to construction-related activities.  See Kornhauser v. United States, 276 U.S. 145, 153 (1928); O'Malley v. Commissioner, 91 T.C. 352, 361 (1988).

4.  Paralegal Service Activity

Respondent does not dispute that the paralegal service activity performed by CSCI during 1999 constitutes the carrying on of a trade or business.  As discussed, we have sustained respondent's determination that petitioner's construction and boating and fishing activities did not constitute the active conduct of a trade or business in 1999.  Petitioners are not entitled to business expense deductions for those activities.

Petitioners combined all of the claimed CSCI business activities on one Schedule C.  The expenses that clearly relate only to the construction and/or boating and fishing activities

---

[6](...continued)
allegedly worked belonged to relatives, including George Maxfield's rental property in Maryland and the Mountain View Cabins, located on Maxfield Homestead Road in Washington State and owned by petitioner's mother and brother.  Finally, although petitioner testified about working on two properties not owned by relatives, he did not assert that he billed for his services, that he expected to be paid, or that he ever was paid for any such work.

are petitioners' deductions of:  $1,137 for work clothes;[7] and $4,335 for "other expenses" described at trial as construction tools.[8]  Respondent's disallowance of these deductions is sustained.

Respondent did allow petitioners a portion of the claimed business expense deductions.  We now discuss the amounts respondent disallowed, although from the record as a whole it remains unclear how some of these expenses relate to petitioner's paralegal service activity.

a.  Cost of Goods Sold (Home Office Construction)

Respondent disallowed in full petitioners' deduction for cost of goods sold.  Petitioner explained that the $4,257 claimed reflects the cost of materials and supplies for work done on his

---

[7] Petitioner testified that the work clothes expense represents his purchase of construction-related items such as tool belts, tools, kneepads, steel-toed shoes, heavy work pants and shirts, and hard hats; and boat-related items such as life preservers, hats, jackets, boat shoes, and fishing suits.

[8] Absent a sec. 179 election, to the extent that petitioner purchased these construction tools to improve his home office (discussed infra, and identified as nondeductible capital improvements), that equipment must also be capitalized.  See Commissioner v. Idaho Power Co., 418 U.S. 1, 13 (1974); Lychuk v. Commissioner, 116 T.C. 374, 386 (2001).  In any event, petitioners are not entitled to deduct this expense under sec. 162 in 1999.

The Court notes that respondent allowed a $385 deduction for a framing gun, which was separately stated on Schedule C.  We will not disturb this allowance because respondent has not asserted an increased deficiency, even though it is unclear just how a nail gun might relate to petitioner's paralegal service activity, his only active trade or business in 1999.

home office. Petitioner testified about the purchase and installation of new flooring, molding, and drywall. Petitioner did not characterize this work as repairs to existing flooring or walls but rather as installing new walls and floor. Petitioners' daughter testified to installing new floor joists, new plywood subflooring, and a new hardwood floor.

Expenses incurred to maintain property used in a trade or business in efficient operating condition ordinarily are deductible. See sec. 162(a); Jacks v. Commissioner, T.C. Memo. 1988-237; Gilles Frozen Custard, Inc. v. Commissioner, T.C. Memo. 1970-73. Likewise, the cost of repairs "which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deductible as an expense". Sec. 1.162-4, Income Tax Regs.; see also sec. 1.263(a)-1(b), Income Tax Regs. (stating that "Amounts paid or incurred for incidental repairs and maintenance of property are not capital expenditures").

In Plainfield-Union Water Co. v. Commissioner, 39 T.C. 333, 337 (1962), we described the standard for distinguishing deductible repairs from capital improvements as follows:

> An expenditure which returns property to the state it was in before * * * and which does not make the relevant property more valuable, more useful, or longer-lived, is usually deemed a deductible repair. A capital expenditure is generally considered to be a more permanent increment in the longevity, utility, or worth of the property.

While section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business", section 263(a) provides that no deduction shall be allowed for "Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." Sec. 263(a)(1). Thus, if the repair is an improvement or replacement, or if it substantially increases the property's value or substantially prolongs its useful life, it is capital in nature and is not currently deductible. See Wolfsen Land & Cattle Co. v. Commissioner, 72 T.C. 1, 14 (1979).

A taxpayer bears the burden of proving that he is entitled to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. at 84. Petitioners, therefore, must demonstrate that these expenses reflect incidental repairs that returned the home office to its original state and maintained the office in efficient operating condition, as opposed to making the home or home office more valuable, permanently improving the home or home office, or adapting the space to a different use; i.e., constructing a home office.

Petitioner testified that the expenses deducted as cost of goods sold represent the cost of "materials to redo the office." The record does not indicate how petitioners used this space before this construction or what demolition might have preceded

the construction.  However, the record clearly reflects that petitioner started from a concrete floor, laid plastic sheeting as a moisture barrier, attached 2- by 6-inch joists to the concrete with a nail gun, laid a new plywood subfloor, and finally installed a new hardwood floor.  Further, petitioner also installed new molding and drywall.

Petitioner did not introduce evidence demonstrating that this construction was merely the incidental repair of his existing home office and not his building the office in the first instance or significantly improving the space with a new floor and new walls.  We conclude that petitioners have not proven that they are entitled to a deduction under section 162 for the cost of these improvements in 1999.[9]

### b.  Car and Truck Expenses

Respondent disallowed car and truck expenses of $12,847. Petitioner claimed that he incurred these expenses for gas, maintenance, and repairs for his vehicles.  Petitioner did not keep a log of business mileage or of business trips taken, and he told respondent's examining agent that he calculated his mileage deduction by using the beginning and ending odometer readings.

Passenger automobiles are "listed property" under section 280F(d)(4).  Section 274(d) disallows any deduction with respect

---

[9] On the 1999 return, petitioners did not elect to deduct any such expenses under sec. 179.

to listed property unless the taxpayer adequately substantiates: (1) The amount of the expense, (2) the time and place of the travel or use of the property, (3) the business purpose of the expense, and (4) the business relationship of the persons using the property.

Even though petitioner introduced receipts documenting vehicle repairs and credit card statements showing gasoline purchases, he did not maintain a log of the business use of his vehicles or introduce any evidence of the business purposes for which he used the vehicles. We find that petitioners have not satisfied the strict substantiation requirements of section 274(d), and we conclude that petitioners are not entitled to any deduction for car and truck expenses for 1999.[10]

### c. Home Office Expenses (Utilities & Insurance)

Petitioners claimed as home office expenses the costs of utilities and homeowner's insurance for their entire residence. Respondent allowed a portion of the costs. See supra note 4. A taxpayer is not entitled to deduct the cost of utilities for his entire home simply because he may have a home office in a portion of the residence. Petitioners reported that their home office occupied 9.26 percent of their residence. Respondent allowed

---

[10] Because petitioners' lack of substantiation precludes any deduction, we need not address the obvious impropriety of claiming both actual vehicle expenses and the standard mileage deduction.

9.26 percent of the claimed expenses for utilities and insurance. See sec. 280A(c); Feldman v. Commissioner, 84 T.C. 1, 8 (1985), affd. 791 F.2d 781 (9th Cir. 1986); Lind v. Commissioner, T.C. Memo. 1985-490. Respondent's determination as to insurance and utilities is sustained.[11]

### d. Travel, Meals, and Lodging Expenses

Respondent disallowed in full $2,416 claimed as travel expenses, $1,490 claimed as meals expenses, and $1,496 claimed as lodging expenses.

A taxpayer may deduct travel expenses incurred while away from home in pursuit of a trade or business. Sec. 162(a)(2). As with the car and truck expenses discussed above, however, traveling expenses are governed by the strict substantiation requirements of section 274(d); a taxpayer must substantiate the amount of the expense, the time and place of the travel, and the business purpose of the expense.

---

[11] Petitioner stated at trial that the deductible insurance amount is different from the $3,155 reported on Form 8829, Expenses for Business Use of Your Home, and also reported on line 15 of Schedule C. Petitioner testified that the $3,155 figure included not only $595 for homeowner's insurance premiums but also amounts for life and mortgage life insurance and car and boat insurance (both of which were also included in car and truck expenses on Schedule C). The examining agent appears to have calculated a prorated allowance based on the full $3,155 claimed. Because respondent did not assert an increase in the deficiency at trial, we will not disturb this apparent error in petitioners' favor.

The credit card statements petitioners introduced appear to include myriad charges for travel, food, and lodging and may demonstrate that petitioner actually spent the sums claimed. However, petitioner did not specify the business purpose of the expenses, identify the persons fed or entertained, or substantiate the business purpose of the trips or of the meals, as required by section 274(d).[12]  Accordingly, petitioners are not entitled to any deduction for travel, lodging, or meals expenses for 1999.

### e.  Equipment and Upgrades (Computer Work)

Respondent disallowed petitioners' claimed deduction for "Equipment and upgrades".  At trial petitioner claimed that the $3,695 amount reported was less than his actual expenses.  Having discovered additional receipts, petitioner now asserts that he should be entitled to a deduction of $5,451 for upgrades to his computer.  While petitioners' exhibits include credit card statements showing charges at stores where one might purchase computer software and equipment among other things, the specific parts and services purchased are generally not itemized. Computers and peripheral equipment are specifically included as

---

[12] Petitioner testified that the meals expenses were not food costs for running his household but instead represented his cost for meals "that I ate out while I was conducting these businesses."  Without more details and some records connecting specific meals with specific legitimate business travel, this testimony does not meet the strict substantiation requirement of sec. 274(d).

listed property in section 280F(d)(4), along with passenger automobiles.[13] Accordingly, such expenses are also subject to the strict substantiation requirements of section 274(d). Petitioner did not introduce sufficient evidence as to the nature of the items purchased or identify any business purpose other than to state that he uses computers "for my CSCI business in reports that I type up and file." Petitioners are not entitled to any deduction for computer equipment or upgrades.[14]

Respondent's determination is sustained, in that petitioners have not demonstrated that they are entitled to business expense deductions greater than those respondent allowed.[15]

---

[13] Petitioners have not established that any amount spent on computer upgrades was for computers and peripheral equipment excluded from listed property by secs. 280A(c)(1) and 280F(d)(4)(B).

[14] Because petitioners failed adequately to substantiate the claimed computer upgrade expenditures, we need not decide whether the expenditures were paid for repairs deductible under sec. 162(a) or for capital improvements controlled by sec. 263(a).

[15] As a result of the disallowance of the business expense deductions, petitioners' Schedule C would reflect a net profit resulting in self-employment income subject to self-employment tax. The calculation of these taxes is purely computational. Petitioners have the burden of proving that respondent erroneously determined liability for self-employment tax. Snyder v. Commissioner, T.C. Memo. 1995-285. Although petitioner complained at trial that imposing self-employment taxes on him for his business income is unfair, he raised no substantive challenge. Respondent's self-employment tax determination is sustained.

Furthermore, because we find that petitioners are not entitled to business expense deductions beyond those respondent
(continued...)

B.  <u>CSCI Gross Receipts</u>

Petitioners reported gross receipts of $28,827 for CSCI for 1999.  At trial petitioner asserted that the correct amount of gross receipts for CSCI is $15,327.  Petitioners failed to keep any books of account or other adequate records to evidence the gross receipts of CSCI.

Petitioners assert that their daughter, who prepared the return, entered $15,327 into the computer but that TurboTax added petitioner's retirement pay (also reported on line 16b of Form 1040, U.S. Individual Income Tax Return) and petitioners' State income tax refund (reported on line 10, Form 1040) to the $15,327 entered as gross receipts.  However, the retirement pay shown on Form 1040 was $10,366, and the State tax refund was $3,594.  The sum of these amounts and the $15,327 petitioner now asserts as the correct gross income is $29,287, not the $28,827 reported as CSCI gross receipts.  Petitioners' TurboTax error theory does not explain the $460 difference.

Petitioners blame the computer software for other errors as well.  For example, petitioners reported their deductions for home mortgage interest and real estate taxes on three separate

_____

15(...continued)
allowed, we need not consider what portion of the disputed expense deductions (such as car and truck expenses and travel, meals, and lodging expenses) relates to those business activities (construction and boating and fishing) that petitioners failed to demonstrate were carried on for profit by CSCI in 1999.

schedules on their 1999 return: (1) On Schedule A, (2) on Form 8829, Expenses for Business Use of Your Home, and (3) on Schedule C. Petitioners reported insurance and utilities expenses for their residence twice: Not only on Form 8829, where no deduction was allowed because petitioners' calculations resulted in a net loss for the year, see sec. 280A(c)(5), but also on lines 15 and 25 of Schedule C as direct business expenses, where they offset gross receipts and increased the loss claimed for CSCI. As discussed above, various insurance premiums were reported both as business insurance and as car and truck expenses on Schedule C. Petitioner's daughter testified that TurboTax supported data entry through question-and-answer forms only, did not permit the user to manually enter or override the TurboTax program, and mysteriously reported income and expense items in multiple places.

We find that petitioners authorized their daughter to file their return electronically and that they considered that filing to be their 1999 Federal income tax return. They may not now disavow the information reported on the return.

Statements made on a tax return signed by the taxpayer have long been considered admissions, and such admissions are binding on the taxpayer, absent cogent evidence indicating that those statements are wrong. Pratt v. Commissioner, T.C. Memo. 2002-279. Petitioners' assertion that computer errors inflated the

gross receipts for CSCI is simply not credible, and it does not represent cogent evidence of misreporting.

We treat the gross receipts listed on petitioners' return as an admission that petitioners had gross receipts of at least the $28,827 reported. See Lare v. Commissioner, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975). The evidence presented at trial is unpersuasive and insufficient to support a lower gross receipt finding.

C. Accuracy-Related Penalty

Section 6662(a) provides a penalty in the amount of 20 percent of the portion of any underpayment attributable to, inter alia, negligence or disregard of rules or regulations. Sec. 6662(b)(1). Pursuant to section 6662(c), negligence includes any failure to make a reasonable attempt to comply, and disregard includes any careless, reckless, or intentional disregard. Negligence also includes any failure by the taxpayer to maintain and retain adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

We have no difficulty in finding that petitioners were negligent in preparing their 1999 tax return and in seeking a $5,725 refund. They claimed clearly improper deductions, reported expenses multiple times on their return, and made no

attempt to maintain books of account or satisfactory records for petitioner's claimed business activities.[16]

Respondent has met his burden of production with respect to the section 6662(a) penalty. See sec. 7491(c). Petitioners bear the burden of proving that respondent's determination is incorrect. Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). To the extent that a taxpayer shows that he had reasonable cause for an underpayment and that he acted in good faith, section 6664(c)(1) may relieve the taxpayer of a penalty under section 6662.

As discussed, petitioners blame TurboTax for all errors on their return. Petitioners' allegations of computer errors are rejected. Petitioners have not demonstrated reasonable cause for their underpayment. Further, on the record as a whole, we are convinced that petitioners knew they were deducting personal expenses as business expenses and that they were claiming the same expenses multiple times on their return. We find that

---

[16] Where a taxpayer maintained some books and records but those documents proved inadequate to satisfy the strict substantiation requirements of sec. 274(d), we have refused to sustain a determination of negligence. See Silverton v. Commissioner, T.C. Memo. 1977-198, affd. without published opinion 647 F.2d 172 (9th Cir. 1981). We have characterized sec. 274(d) as a standard of proof, not a standard determinative of negligence or intentional disregard. Id. That is not this case. Petitioner's records were inadequate and he failed to keep books of account. This failure renders petitioners liable for the penalty under sec. 6662 for negligence or intentional disregard.

petitioners have demonstrated neither reasonable cause nor good faith.  Respondent's determination is sustained.

IV.  Collection Action

Respondent issued the levy notice, petitioners requested a hearing, and respondent's Appeals Office conducted the hearing and sustained the decision to collect by levy.  We found in our earlier opinion that respondent abused his discretion in not allowing petitioners to challenge the underlying tax liability during the collection hearing.

At the collection hearing, the Appeals officer verified that the requirements of applicable law and administrative procedure were met, pursuant to section 6330(c)(1).  Petitioners were allowed to raise issues relevant to the unpaid tax and to the proposed levy.  See sec. 6330(c)(2)(A).  Petitioners raised two challenges to the underlying tax liability:  (1) That the assessment was untimely, and (2) that the deficiency respondent determined in the notice of deficiency is incorrect.  In their request for a collection hearing, petitioners also mentioned the appropriateness of the collection action, collection alternatives, and spousal defenses.

Petitioners asserted that the assessment was untimely and time barred by the 3-year period of limitations on assessments provided by section 6501(a) and (b)(1).  We found in Maxfield v. Commissioner, T.C. Summary Opinion 2007-79, that respondent

mailed a notice of deficiency to petitioners on March 6, 2003, which was within 3 years of the due date of petitioners' return. As discussed in that opinion, a properly addressed notice of deficiency suspends the period of collection, even where the taxpayer does not receive the notice of deficiency. We concluded that the assessment period did not expire until September 15, 2003, pursuant to section 6503(a)(1), and that respondent's assessment on August 4, 2003, was timely.

As discussed here, petitioners have now had the opportunity to challenge the underlying tax liability for 1999. Their challenge has failed.

Although petitioners listed "Appropriate spousal defenses" on their Form 12153, the record does not indicate that they pursued any spousal defenses at the hearing. Petitioners raised no spousal defenses at trial. This issue is deemed conceded. See Rule 331(b)(4); Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003); see also Giamelli v. Commissioner, 129 T.C. 107, 113-114 (2007); Magana v. Commissioner, 118 T.C. 488, 493 (2002).

Petitioners also listed "Collection alternatives such as installment agreement, offer in compromise, posting a bond or substitution of other assets" on Form 12153. After the telephone hearing, the Appeals officer sent petitioners a collection information statement and allowed petitioners more than a month to return the completed statement and to provide financial

information required for the Appeals officer to evaluate and consider collection alternatives.  See <u>Wells v. Commissioner</u>, T.C. Memo. 2003-234.  Petitioners did not return the completed statement, did not provide the requested financial information, and did not propose any collection alternatives for consideration.

Petitioners make no other arguments challenging the notice of determination.  In particular, petitioners fail to make a valid challenge to the appropriateness of respondent's intended collection action, to raise a spousal defense, or to offer alternative means of collection.  See sec. 6330(c)(2)(A).

Respondent's Appeals officer did not consider spousal defenses or collection alternatives at the collection hearing because petitioners did not pursue those claims and petitioners did not provide the required financial information.  This was not an abuse of discretion.

Having resolved petitioners' challenges to the underlying tax liability, and concluding that respondent's other determinations were not an abuse of discretion, we hold that the collection action may now proceed.

<u>Decision will be entered for respondent</u>.